**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JOHN WAYNE** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL CLARK, DEREK** | : | |
| **OBERLANDER, JAMIE SORBER,** | : | **NO. 21-4209** |
| **JOHN WETZEL, GEORGE LITTLE,** | : | |
| **TABB BICKELL, and LEE ESTOCK** | : | |

### MEMORANDUM OPINION

**SAVAGE, J.**                                                          **December 29, 2022**

Plaintiff John Wayne, who has been held in solitary confinement in various Pennsylvania State Correctional Institutions (SCIs) for the past five years, brought this § 1983 action for damages and to enjoin the defendants from continuing to hold him in solitary confinement. He claims the conditions of his confinement constitute cruel and unusual punishment prohibited under the Eighth Amendment. He contends the process to review his status in restricted housing is perfunctory and meaningless, violating his Fourteenth Amendment right to due process.

Moving to dismiss for lack of personal jurisdiction, defendants John E. Wetzel, George Little, Tabb Bickell, Michael Clark, Lee Estock, Derek Oberlander and Jamie Sorber contend they are immune to suit under the Eleventh Amendment. They also argue that Wayne has not stated a plausible claim under the Eighth or Fourteenth Amendments. Wayne counters that his claim is a forward-looking request for injunctive relief that falls within the *Ex parte Young* exception to Eleventh Amendment immunity. He also contends that he has alleged facts showing that his conditions of confinement constitute cruel and unusual punishment and that his procedural due process rights were violated.

Wayne has not alleged facts supporting claims for Eighth and Fourteenth Amendment violations against Clark, Oberlander, Sorber and Estock because they had no personal involvement in the decision to house him in any unit.  Wayne has sufficiently alleged facts, which if proven, would establish that Wetzel, Little and Bickell were personally involved.  He has also alleged facts supporting claims for Eighth and Fourteenth Amendment violations against them in their individual capacities.  We also find that Wayne's claims against Little and Bickel in their official capacities are not barred by the Eleventh Amendment or qualified immunity.[1]  Therefore, we shall deny the defendants' motion to the extent it seeks dismissal of the claims against Wetzel, Little and Bickell, and grant it as to Clark, Oberlander, Sorber and Estock.

## Background

The following facts are as alleged in Wayne's amended complaint.  For purposes of this motion, we accept them as true and draw all reasonable inferences from them in Wayne's favor.

Wayne has been on the Department of Corrections' (DOC) Restricted Release List (RRL) and housed in a Restricted Housing Unit (RHU) since September 2017.[2]  Inmates are placed on the RRL when they "pose[] a threat to the secure operation of the facility and where a transfer to another facility or jurisdiction would not alleviate the security concern."[3]   RRL inmates are placed in "indefinite, sometimes permanent, solitary

---

[1] Wayne did not sue Wetzel in his official capacity.  *See* Am. Compl. ¶ 8, ECF No. 20.

[2] *Id.* ¶¶ 1–4.

[3] COMMONWEALTH OF PA., DEP'T OF CORR., POL'Y NO. DC-ADM 802, ADMINISTRATIVE CUSTODY PROCEDURES § 1.C.1 (2022), ECF No. 29-3 at 8–32 (attached as Ex. D to Am. Compl.) ["DC-ADM 802"].

confinement" in an RHU,[4] a unit "designed to temporarily house certain incarcerated persons in solitary confinement away from the facility's general population."[5]

Only the DOC's Secretary or the Executive Deputy Secretary for Institutional Operations (EDSI) can place or remove inmates on the RRL.[6]  Wetzel was the DOC Secretary from 2011 to October 2021.[7]  Little has been the DOC Secretary since October 2021.[8]  Bickell has been the EDSI since 2018.[9]

Wayne was placed in an RHU after an altercation with another inmate that occurred on September 3, 2017.[10]  Three days later, after a disciplinary hearing, he was sentenced to 150 days in disciplinary custody in SCI Albion's RHU.[11]  According to Wayne, the conditions of confinement in RHUs are the equivalent of solitary confinement.[12]

Even though the Program Review Committee (PRC) is supposed to evaluate solitary confinement inmates every 90 days to determine if it is still necessary to house the inmate in an RHU,[13] Wayne was not seen by the PRC until December 27, 2017—112

---

[4] Am. Compl. ¶ 73.

[5] *Id.* ¶ 19.

[6] *Id.* ¶¶ 8–9, 21, 74 (DOC Secretary); DC-ADM 802 §§ 1.C.1, 1.C.6, 2.D.10.a, 4.B.1 (EDSI).

[7] *Id.* ¶ 8.

[8] *Id.* ¶ 9.

[9] *Id.* ¶ 10.

[10] Am. Compl. ¶¶ 22–23.

[11] *Id.* ¶ 23.

[12] *Id.* ¶ 19.

[13] *Id.* ¶ 24.

days after his placement in the RHU.[14]  At the time of his PRC review, Wayne was placed on the RRL "due to assaultive behavior."[15]   According to Wayne, the DOC Secretary approved his RRL placement.[16]

Because he was on the RRL, Wayne was held in the RHU at SCI Albion for more than two years.[17]  In November 2019, after he was transferred to SCI Pine Grove, he remained on the RRL and in the RHU.[18]  In July 2020, Wayne was transferred to SCI Forest, where he was held in the RHU until he was transferred to SCI Phoenix.[19]  Since arriving at SCI Phoenix on April 8, 2021,[20] he has been on the RRL and housed in a RHU.[21]

Although the PRC at each facility was supposed to review his RHU status every 90 days, Wayne alleges that they "frequently have failed to timely review [his] status or did not conduct a review altogether."[22]  Wayne remains on the RRL and in a RHU even though he has not received a misconduct since April 2020—more than two years.[23]

---

[14] *Id.* ¶ 25.

[15] *Id.* ¶ 25; PRC 90 Day Review (Mar. 24, 2022), ECF No. 29-3 at 2 (attached as Ex. A to Am. Compl.) ["PRC Review"].

[16] Am. Compl. ¶¶ 8–9, 21, 74.

[17] *Id.* ¶¶ 25–26.

[18] *Id.* ¶¶ 27–28.

[19] *Id.* ¶¶ 29–30.

[20] *Id.* ¶ 30.

[21] *Id.* ¶ 32.

[22] *Id.* ¶ 79.

[23] *Id.* ¶ 105.

In a July 2021 memo to inmates, Wetzel announced the new Intensive Management Unit (IMU) and program.[24]   The program was approved by Wetzel and Bickell.[25]   As described in the memo, the IMU is an RHU that provides "an environment where [inmates] can work on [their] history of misconduct and violence in a setting that protects both [DOC] staff and [inmates'] fellow incarcerated individuals."[26]   The program "is designed to give [inmates] insight into the thinking errors that lead to inappropriate behavior."[27]

IMU inmates are placed in one of 6 tiers.[28]   Tier 6 is the most restrictive and tier 1 the least.   Inmates earn additional privileges as they progress through the program.[29] The foundation of the IMU is the "Anger Management Program," a psychoeducational program "designed to enhance inmate's awareness of their own behaviors and behavioral patterns, and improve inmate's functioning in three main areas: Emotional Management, Communication, [and] Interpersonal Skills."[30]   Depending on the tier, inmates complete weekly packets from an "Anger Management Workbook"; take part in weekly exercises where they demonstrate how to implement their new skills; complete in-cell activities and

---

[24] Letter from John Wetzel, Secretary of Corrections, to Intensive Management Unit (IMU) Inmates Re: Housing Status (July 8, 2021), ECF No. 29-3 at 4 (attached as Ex. B to Am. Compl.) ["Housing Status Letter"].

[25] Am. Compl. ¶ 89.

[26] Housing Status Letter ¶ 1.

[27] *Id.*

[28] Intensive Management Unit Program Information (Dec. 7, 2021) ¶ 1, ECF No. 29-3 at 6 (attached as Ex. C to Am. Compl.) ["IMU Program Information"].

[29] Housing Status Letter ¶ 1.

[30] IMU Program Information ¶ 2.

workbooks; and participate in group sessions.[31]  There are 24 packets that inmates must complete at each tier before progressing to the next tier.[32]  These packets make up the "Anger Management Workbook."[33]  Inmates keep the packets for future use to reinforce the materials they are learning and practicing in the IMU.[34]

Wayne was placed in the IMU program at SCI Phoenix in December 2021.[35]  He was still on the RRL.  Wayne had no opportunity to object to his placement.[36]  He was assigned to Tier 4/5.[37]  Wayne does not know how he is supposed to progress through the IMU tiers, and no DOC official has explained the process to him.[38]  He alleges that the IMU program "does nothing to ameliorate the conditions of solitary confinement, reduce its duration for incarcerated persons, or further enable persons on the RRL and in the RHU to understand what they can do to reduce time spent in solitary confinement."[39]

The PRC continued to review Wayne's RHU housing and RRL status while he was in the IMU.[40]  But, the PRC could not release him from the RHU because he had not progressed through all the IMU tiers.[41]  As a result, Wayne has been trapped in a cycle

---

[31] *Id.* ¶¶ 2, 4, 6–7.

[32] *Id.* ¶¶ 3–4.

[33] *Id.* ¶ 5.

[34] *Id.*

[35] Am. Compl. ¶ 85.

[36] *Id.* ¶ 86.

[37] *Id.* ¶ 85.

[38] *Id.* ¶¶ 99–100.

[39] *Id.* ¶ 99.

[40] *Id.* ¶ 98.

[41] *Id.*

where he "remains housed in the RHU because of his status on the RRL, yet he cannot progress off of the RRL in time for his 90[-]day PRC reviews."[42]  Wayne contends that this cycle shows that "PRC reviews are essentially meaningless."[43]

### Standard of Review

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).  A conclusory recitation of the elements of a cause of action is not sufficient.  *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).  The plaintiff must allege facts necessary to make out each element.  *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8).  In other words, the complaint must contain facts which support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions.  Then, we determine whether the alleged facts make out a plausible claim for relief.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679).  All well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in

---

[42] *Id.* ¶ 101.

[43] *Id.* ¶ 98.

the plaintiff's favor.  *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009)

(quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

In deciding a motion to dismiss, courts generally consider only the allegations of

the complaint, exhibits attached to the complaint, documents incorporated by reference

in the complaint, and matters of public record.  *Cal. Pub. Emps.' Ret. Sys. v. Chubb Corp.*,

394 F.3d 126, 134 (3d Cir. 2004) (citing *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d

1410, 1420, 1426 (3d Cir. 1997)); *Pension Benefit Guar. Corp. v. White Consol. Indus.,

Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) (citations omitted).

## Analysis

### Section 1983 Claims

To state a claim under section 1983, Wayne must allege facts, which if proven,

would establish: (1) the deprivation of a right secured by the Constitution or the laws of

the United States; and (2) that the person depriving him of the right acted under color of

state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988) (citations omitted); *Miller v. Mitchell*,

598 F.3d 139, 147 (3d Cir. 2010) (citation omitted); *Byrne v. Whole Foods Mkt., Inc.*, No.

17-1033, 2017 WL 1134120, at *2 (E.D. Pa. Mar. 27, 2017).

To impose liability upon a defendant in a section 1983 action, the plaintiff must

show that the defendant had personal involvement in the wrongdoing.  *Williams v. City of

York*, 967 F.3d 252, 261 (3d Cir. 2020).  *Respondeat superior* alone does not give rise to

section 1983 liability.  *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020) (citing *Rode v.

Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)).  An allegation that the defendant was

responsible for supervising those involved, without more, is insufficient.  *Rode*, 845 F.2d

at 1208.  Rather, liability must be demonstrated by showing that the defendant personally

directed or, with actual knowledge, acquiesced in the conduct. *Dooley*, 957 F.3d at 374 (citing *Rode*, 845 F.2d at 1207). The plaintiff's allegations must describe the defendant's participation in or actual knowledge of and acquiescence in the wrongful conduct. *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (citing *Rode*, at 1207). Constructive knowledge is not enough; the defendant must have had actual knowledge of the conduct. *Id.* (citing *Baker v. Monroe Twp.*, 50 F.3d 1186, 1194 (3d Cir. 1995)).

Wayne does not allege that Clark, Estock, Oberlander and Sorber had any personal involvement placing him in RRL status that led to his RHU placement. These defendants were superintendents at state correctional institutions where Wayne was or is housed while on the RRL and in the RHU. Although Wayne alleges that they were responsible for overall operations and oversight of RHU placements at their respective facilities, he does not allege that had any role in placing him on the RRL or in the RHU and IMU. They had no part in the decision regarding his placement then or now. Therefore, we shall dismiss Wayne's Section 1983 claims against Clark, Estock, Oberlander, and Sorber in their individual and official capacities.[44]

Wayne has alleged that Wetzel, Little and Bickell were personally involved in his RRL status and RHU placement. He has also alleged that Wetzel and Bickel created and approved the IMU. According to the amended complaint, only the DOC Secretary can authorize an inmate's removal from the RRL. Wetzel, the former DOC Secretary, had and Little, the current DOC Secretary, has this authority. According to the DOC's Administrative Custody Procedures, inmates cannot be removed from the RRL without

---

[44] Because we find that Clark, Oberlander, Sorber and Estock had no decision-making authority in Wayne's placement and thus did not deprive him of his constitutional rights, we need not address their alternative contention that they are entitled to Eleventh Amendment immunity or qualified immunity.

the EDSI's approval.  That means that Bickell, the DOC's EDSI, also retains final decision-making authority regarding placement on and removal from the RRL.[45]

Wayne cannot be removed from the RRL without the approval of Little and Bickell. Wayne will remain in an RHU, specifically the IMU, unless and until these prison officials authorize his removal from the RRL.  These allegations show their personal involvement.

Eighth Amendment

Wayne alleges that Wetzel, Little and Bickell subjected him to cruel and unusual punishment in violation of the Eighth Amendment by approving his placement and refusing to remove him from the RRL.  Because he is on the RRL, he is housed in an RHU where he claims the conditions constitute solitary confinement.  As a result, he is deprived of life's basic necessities, including his physical and psychological health, environmental stimulation, social interaction and basic human dignity.

The Eighth Amendment prohibits the infliction of cruel and unusual punishment. U.S. CONST. AMEND. VIII.  Cruel and unusual punishment is punishment that "violates civilized standards of humanity and decency."  *Griffin v. Vaughn*, 112 F.3d 703, 709 (3d Cir. 1997).  Prison conditions are cruel and unusual if they deprive inmates of basic human needs, such as food, sanitation and medical care.  *Clark v. Coupe*, 55 F.4th 167, 179 (3d Cir. 2022); *Dongarra v. Smith*, 27 F.4th 174, 178 (3d Cir. 2022) (citing *Rhodes v. Chapman*, 452 U.S. 337, 347-48 (1981)); *Tillman v. Lebanon Cnty. Corr. Facility*, 221 F.3d 410, 417–18 (3d Cir. 2000).  An inmate challenging the conditions of his confinement must show that the deprivation was objectively serious and that a prison official had a

---

[45] The allegations in the amended complaint are inconsistent with the DOC policy attached to the amended complaint.  The amended complaint states that only the DOC Secretary can authorize an inmate's removal from the RRL.  According to DC-ADM 802, only the EDSI can authorize removal.

sufficiently culpable state of mind, that is, he or she acted with deliberate indifference. *Clark*, 55 F.4th at 186 (quoting *Thomas v. Tice*, 948 F.3d 133, 138 (3d Cir. 2020)); *see also Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Objectively Serious

Whether the harm is objectively serious is measured by society's view of the risk to the prisoner's health and safety, that is, "whether 'it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk.'" *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 257 (3d Cir. 2010) (quoting *Helling v. McKinney,* 509 U.S. 25, 36 (1993)) (emphasis in original). The Eighth Amendment does not require comfortable prisons. *Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 373 (3d Cir. 2019) (quoting *Rhodes*, 452 U.S. at 349). However, "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care." *Id.* (quoting *Farmer*, 511 U.S. at 832).

Wayne contends that his conditions of confinement while on the RRL and in the RHU, including the IMU, are objectively serious, posing a substantial risk of serious harm to his physical and psychological health.

For the last five years, Wayne has been held in a cell equipped with a light that is illuminated 24 hours a day.[46]  The cell has scant natural light.[47]  The only window is narrow, tinted, and too small to view the outside world.[48]  He is locked in the cell for 22

---

[46] Am. Compl. ¶¶ 33, 35.

[47] *Id.* ¶ 36.

[48] *Id.*

hours a day.[49]  He is allowed two hours of exercise outside each day in a small pen with no exercise equipment.[50]

Wayne must eat meals alone in his cell.[51]  He is allowed approximately 15 minutes per meal.[52]  Each time he leaves his cell, he is subject to mandatory strip and body cavity searches.[53]  He is allowed three showers a week.[54]  He is not allowed any contact visits.[55] His commissary privileges are restricted, allowing him to buy only certain items.[56]

These conditions, taken together, are equivalent to solitary confinement.  The Third Circuit has held that "prolonged solitary confinement" is objectively serious because it poses a substantial risk of serious psychological and physical harm.  *Porter v. Pa. Dep't of Corr.*, 974 F.3d 431, 441–44, 451 (3d Cir. 2020).  Indeed, there is a "robust body of legal and scientific authority recognizing the devastating mental health consequences caused by long-term isolation."  *Clark*, 55 F.4th at 179 (quoting *Palakovic v. Wetzel*, 854 F.3d 209, 225 (3d Cir. 2017)).  The "severe and traumatic psychological damage" can "lead to high rates of self-harm or suicide in inmates who ha[ve] spent time in solitary confinement."  *Id.*  These risks are present for inmates, like Wayne, who have been in solitary confinement for five or fewer years.  *See e.g.*, *Palakovic*, 854 F.3d at 216–17.

---

[49] *Id.* ¶ 34.

[50] *Id.* ¶¶ 38–39.

[51] *Id.* ¶ 40.

[52] *Id.* ¶ 41.

[53] *Id.* ¶ 43.

[54] *Id.* ¶ 42.

[55] *Id.* ¶ 45.

[56] *Id.* ¶ 46.

Wayne has alleged specific facts about the detrimental effects the conditions have had on his physical and psychological health.  Specifically, he suffers from anxiety, distress, and despair.[57]  These allegations, if proven, show that his conditions of confinement were objectively serious.

Deliberate Indifference

Prison officials act with deliberate indifference when they "both know of and disregard an excessive risk to inmate health or safety.  The … element of deliberate indifference is subjective, not objective … meaning that the official must actually be aware of the existence of the excessive risk; it is not sufficient that the official should have been aware."  *Mammana*, 934 F.3d at 373 (citing *Woloszyn v. County of Lawrence*, 396 F.3d 314, 321 (3d Cir. 2005) (omissions in original).  A prison official may act with deliberate indifference if he "had a reasonable opportunity to intervene and simply refused to do so."  *Ricks v. Shover*, 891 F.3d 468, 479 (3d Cir. 2018) (quoting *Smith v. Mensinger*, 293 F.3d 641, 650-51 (3d Cir. 2002)).

We have already concluded that Wayne has alleged that Wetzel, Little and Bickell had some level of personal involvement in his RRL status and RHU housing.  The question is whether he has alleged enough facts showing that they acted with deliberate indifference to his physical and psychological health.

Wayne alleges that Wetzel, Little and Bickell knew the dangers posed to his physical and psychological health by prolonged isolation but failed to intervene in his continued solitary confinement.  As the amended complaint notes, it is well known that inmates in solitary confinement are at an increased risk for decompensating, psychotic

---

[57] Am. Compl. ¶ 48.

episodes, depression, anxiety, mental deterioration, decreased cognitive function.[58]   He adds that solitary confinement inmates often experience extreme feelings of hopelessness, despair, rage, and anger, and are higher risk of suicide or suicide attempts.[59]

Wayne claims that as DOC officials, Wetzel, Little and Bickell had to have known of these excessive risk to his well-being.   The Third Circuit "has recognized 'the increasingly obvious reality that extended stays in solitary confinement can cause serious damage to mental health.'"   *Clark*, 55 F.4th at 180 (quoting *Palakovic*, 854 F.3d at 226).

Despite the risks to his physical and mental health, Wetzel, Little and Bickell did not remove Wayne from the RRL.   Wayne continues to be housed in an RHU in solitary confinement.   Solitary confinement is not a *per se* violation of the Eighth Amendment. But, when the conditions of the confinement are inhumane or totally without penological justification, they may amount to cruel and unusual punishment.   *See id.* at 188.   Wayne describes conditions of confinement that could be characterized as inhumane.   The justification for placing him on the RRL in 2017 was his assaultive behavior.   Because he has not received a misconduct in more than two years, we cannot discern any penological justification for keeping him in the equivalent of solitary confinement.   These allegations, if proven, are enough to show that Wetzel, Little and Bickell acted with deliberate indifference to Wayne's physical and psychological well-being.   Accordingly, we shall deny their motion to dismiss the Eighth Amendment claim.

---

[58] Am. Compl. ¶¶ 49–52.

[59] *Id.* ¶¶ 53–54.

Fourteenth Amendment

Wayne asserts a liberty interest-based procedural due process claim against Wetzel, Little and Bickell.  He contends that they assigned him to the RRL and refused to remove him, condemning him to prolonged solitary confinement without due process in violation of the Due Process Clause of the Fourteenth Amendment.  He adds that, to the extent his RRL status was periodically reviewed, the reviews were perfunctory and infrequent.

The due process analysis starts with determining whether the liberty interest asserted is protected by the Fourteenth Amendment.  *Montanez v. Sec'y Dep't of Corr.*, 773 F.3d 472, 482–83 (3d Cir. 2014) (quoting *Evans v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 650, 663 (3d Cir. 2011)); *see also Holland v. Rosen*, 895 F.3d 272, 297 (3d Cir. 2018) (citations omitted).  If it is a protected interest, we must then determine what process is necessary to protect it.  *Newman v. Beard,* 617 F.3d 775, 783 (3d Cir. 2010) (citation omitted).  If the interest is not protected, no process is necessary.  Hence, as a threshold matter, the plaintiff must establish that he had a protected liberty interest.  *See Fraise v. Terhune*, 283 F.3d 506, 522 (3d Cir. 2002) (finding that succeeding on a due process claim requires demonstrating that the plaintiff was deprived of a liberty interest).

Prisoners do not enjoy the same liberty interests as others do.  *See Sandin v. Conner*, 515 U.S. 472, 485 (1995).  Incarceration "brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system."  *Id.* (quoting *Jones v. N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 125 (1977)).  "To rise to the level of a liberty interest, the right alleged must confer 'freedom from restraint which . . . imposes *atypical and significant hardship* on the

inmate in relation to the ordinary incidents of prison life.'"  *Williams v. Sec'y Pa. Dep't of Corr.*, 848 F.3d 549, 559 (3d Cir. 2017) (emphasis in *Williams*) (quoting *Griffin v. Vaughn*, 112 F.3d 703, 708 (3d Cir. 1997)).  "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  *Montayne v. Haymes*, 427 U.S. 236, 242 (1976).

The question is whether Wayne has alleged that his five years on the RRL in the RHU imposed an atypical and significant hardship.  In making this determination, we consider: "(1) the duration of the challenged conditions; and (2) whether the conditions overall imposed a significant hardship in relation to the ordinary incidents of prison life."  *Williams*, 848 F.3d at 560 (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2017)).  Prolonged, indefinite solitary confinement may impose an atypical and significant hardship.  *Shoats*, 213 F.3d at 144.

We first consider the duration of Wayne's placement on the RRL and segregation in RHUs.  There is no bright line defining where the duration of segregation becomes atypical.  *Williams*, 848 F.3d at 561–62.  An inmate sentenced to thirty days in disciplinary confinement does not endure such hardship.  *See Sandin*, 515 U.S. at 486; *see also Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 171 (3d Cir. 2011) (citing *Sandin*, 515 U.S. at 483-84) (holding that inmates in disciplinary hearings are not entitled to procedural due process because the resulting sanctions do not affect a protected liberty interest).   Nor does an inmate in administrative custody for fifteen months.  *Griffin*, 112 F.3d at 708.  Wayne alleges that he has spent five years on the RRL in RHUs where the conditions,

as we have noted, amount to solitary confinement.  Thus, the length of his confinement in prolonged isolation is atypical.

How much time is too much is not measured by the mere length of the confinement. It varies with the conditions.  The more restrictive the conditions are, the shorter the period of confinement is tolerated.  Conversely, the less restrictive, the longer the period is before it becomes a hardship.  Thus, the analysis must assess the duration and conditions together.

To determine whether the confinement imposed a significant hardship, we consider the nature of the prison conditions in relation to the ordinary incidents of prison life, including "access to open air activities without strip searches; regular access to windows and natural light; daily access to showers; and the right to more frequent visits where contact is permitted." *Williams*, 848 F.3d at 563.  We look for access to group religious services, job and vocational programs, group sports, and phone calls; human contact with individuals other than prison staff; the ability to qualify for parole; the hours a day confined to his cell; and whether the inmate ate meals alone. *Id.* at 562–64.  A significant hardship was found to exist where an inmate was confined to his cell for twenty-two to twenty-four hours a day indefinitely, ate his meals alone in his cell, was "placed inside a small locked cage during much of the limited time he was allowed to leave his cell and . . . was subject to invasive strip search each time he left his cell for exercise." *Id.* at 563.

Wayne has alleged sufficient facts which, if proven, establish that his five years on the RRL in RHUs amounted to an atypical and significant hardship.  Wayne was confined to his cell for twenty-two hours a day and eats all his meals alone in his cell.  He is exposed

to constant illumination and almost no natural light.  He struggles to sleep and is only permitted three showers a week.  Every time he leaves his cell, he is subject to an invasive strip search and potential body-cavity search.  Wayne is permitted only two hours of outside exercise in a fenced-in exercise pen per day.  He has also been prohibited from having any contact visits, including such visits with his attorneys.

These conditions of confinement taken together with the length of his placement on the RRL and in RHUs amount to an atypical and significant hardship, triggering a liberty interest.

The implication of a liberty interest requires us to determine whether Wayne has alleged facts that, if proven, would establish that he was denied due process.  Due process in this context requires: (1) a "regular and meaningful review of [Wayne's] continued placement on" the RRL; (2) a "statement of reasons for the continued placement" on the RRL; (3) a "meaningful opportunity to respond to the reasons provided" for the continued placement; and (4) a hearing.  *Porter v. Pa. Dep't of Corrs.*, 947 F.3d 431, 440 (3d Cir. 2020) (quoting *Williams*, 848 F.3d at 576).

Wayne alleges the defendants failed to conduct any meaningful review of his RRL status.[60]  He is not provided any notice of a review of his RRL status.[61]  Wayne adds that the PRCs "frequently have failed to timely review [his] status or did not conduct a review

---

[60] Am. Compl. ¶ 75.

[61] *Id.* ¶ 76.

altogether."[62]  To the extent the PRCs conducted reviews, they were "perfunctory in nature."[63]

Wayne also claims that he was not provided statements of the reasons for his continued RRL placement.  He alleges that DOC officials do not notify him of decisions to keep him on the RRL.[64]  According to Wayne, the PRC reports he receives do not contain specific reasoning or provide a basis for why he remains on the RRL.[65]  Instead, so Wayne alleges, the reports usually note that he has raised concerns about his living conditions before stating that he should remain in his current RRL status.[66]

Wayne cites to his March 24, 2022 PRC review to show that he was not provided a meaningful review or a statement of reasons for his continued RRL placement.  He had been in administrative custody for 331 days at this review.[67]  The initial reason for his confinement was listed as: "Placed on RRL due to assaultive behavior."[68]  The PRC recommended Wayne remain in the IMU because he was still on RRL status.[69]  The PRC's summary stated: "[d]iscussed phase system as opposed to tier system.  Asked for sneakers due to claimed medical issues.  Directed to have medical review and make a

---

[62] *Id.* ¶ 79.

[63] *Id.* ¶ 80.

[64] *Id.* ¶ 77.

[65] *Id.* ¶ 82.

[66] *Id.* ¶ 83.

[67] PRC Review

[68] *Id.*

[69] *Id.*

recommendation."[70]   This vague explanation makes it difficult for one to meaningfully challenge the PRC's review and decision.

Wayne's RRL status reviews, as alleged, were not regular or meaningful.  Nor did he receive explanations for his continued placement or the opportunity to respond. Indeed, Wayne complains that he has not been told what he must to do be removed from the RRL.  Accordingly, we find that Wayne has sufficiently alleged facts that he was denied due process of law in violation of the Fourteenth Amendment.

*Eleventh Amendment Immunity*

States are immune from suit under the Eleventh Amendment.  *Lombardo v. Pennsylvania*, 540 F.3d 190, 194-95 (3d Cir. 2008).  Suits against state officials in their official capacity are also generally barred by the Eleventh Amendment because they are considered suits against the state itself.  *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

There is an exception to Eleventh Amendment immunity.  Where the plaintiff requests declaratory or injunctive relief against state officials in their official capacity, immunity does not attach.  *Ex parte Young*, 209 U.S. 123, 159-60 (1908).  The exception applies where the plaintiff seeks prospective relief from an ongoing violation of federal law. *Verizon Maryland, Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002) (citing *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 296 (1997) (O'Connor, J., concurring in part and concurring in the judgment)); *MCI Telecomm. Corp. v. Bell Atl. Pennsylvania*, 271 F.3d 491, 514 (3d Cir. 2001) ("[W]e continue to view *Young* as

---

[70] *Id.*

generally applicable any time a plaintiff seeks prospective relief against individual state officers from an ongoing violation of federal law.").

Wayne brings this claim against state officials acting in their official capacities.[71] He contends that Little and Bickell are violating his Eighth Amendment protection against cruel and unusual punishment by continuing to house him in solitary confinement and depriving him of life's basic necessities.  He further argues that by assigning and refusing to remove him from the RRL, they are condemning him to prolonged solitary confinement without due process in violation of the Due Process Clause of the Fourteenth Amendment.  Wayne seeks prospective relief for this ongoing deprivation in the form of an injunction ending his solitary confinement.

Little and Bickell are not entitled to Eleventh Amendment immunity.  Little, the DOC's Secretary, and Bickell, the DOC's EDSI, have the power to remove Wayne from the RRL, but have refused to do so.  Therefore, because he has sufficiently alleged an ongoing violation of a constitutional right and requests prospective relief, Wayne's claim against Little and Bickell in their official capacities is not barred by the Eleventh Amendment.

Little and Bickell argue that Wayne's request for injunctive relief is not ripe.[72]  They contend that Wayne is no longer housed in the RHU.  He is housed in the IMU, affording

---

[71] We have already found that Clark, Oberlander, Sorber and Estock did not have personal involvement in Wayne's RRL status in the RHU or IMU status.  They have no decision-making authority in his placement.

[72] In a footnote, defendants argue that: "Alternatively, it is possible that Plaintiff's claims concerning the RRL have been *mooted* by the DOC's new approach, but this determination likely cannot be made at the present procedural stage."  Mem. of Law in Supp. of Commonwealth Defs.' Mot. to Dismiss at 10 n.2, ECF No. 37.  Based on the facts as alleged, inmates can be in the IMU and on the RRL.  Wayne also claims that the IMU did "nothing to ameliorate the conditions of solitary confinement, reduce its duration for incarcerated persons, or further enable persons on the RRL and in the RHU to understand what they can

him a path to transition back to general population.  They argue that his claim that the program is meaningless is premature and speculative because he has not alleged that he is unable to succeed in the IMU.

A case is ripe if both parties can present and adequately advocate for their positions, the facts are sufficiently developed so that the court can issue a conclusive decision, and a party has been sufficiently harmed to justify the use of judicial resources. *Peachlum v. City of York*, 333 F.3d 429, 433-34 (3d Cir. 2003).  There must be a "real, substantial controversy between parties" involving a "dispute definite and concrete." *Babbitt v. UFW Nat'l Union*, 442 U.S. 289, 298 (1979) (quoting *Ry. Mail Assn. v. Corsi*, 326 U.S. 88, 93 (1945)).  The legal interest must be "of sufficient immediacy and reality" justifying judicial resolution.  *Peachlum*, 333 F.3d at 434 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273 (1941)).

Wayne's claim is not speculative or contingent on future events.  He alleges that he has been in solitary confinement for five years, causing him to suffer physical and psychological harms.  It is of no moment that he was transferred to the IMU.  Indeed, he remained on the RRL while in the IMU in conditions similar to those in the RHU.  Wayne alleges that the conditions of his confinement remained the same.  Because Wayne has alleged that his prolonged, indefinite placement in solitary confinement has caused and continues to cause him harm, his claim is ripe for a judicial decision.

do to reduce time spent in solitary confinement."  Am. Compl. ¶ 99.  Therefore, Wayne's claims are not moot.

*Qualified Immunity*

Little and Bickell argue that they are protected by qualified immunity.  Government officials are immune from suit when their actions do not violate "clearly established statutory or constitutional rights of which a reasonable person would have known."  *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (citing *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).

In evaluating a qualified immunity defense, we ask two questions.  First, do the alleged facts, viewed in a light most favorable to the plaintiff, demonstrate that the officials' conduct violated a statutory or constitutional right?  *Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 168 (3d Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 536 U.S. 731, 735 (2011)).  Second, was the right "clearly established" at the time of the challenged conduct?  *Id.* at 168-69.

We may address these questions in either order.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).  In other words, if we find that the alleged right was not clearly established, the inquiry ends and the official is entitled to qualified immunity.  To deny immunity, there must be sufficient precedent at the time of the action to put the official on notice that his or her conduct was prohibited.  *Baloga*, 927 F.3d 742, 762 (3d Cir. 2019) (quoting *Mammaro*, 814 F.3d at 169).

The relevant inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.  *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

Applying this test, we find that "it is well-established in our Circuit that such prolonged solitary confinement satisfies the objective prong of the Eighth Amendment test and may give rise to an Eighth Amendment claim, particularly where . . . [d]efendants

have failed to provide any meaningful penological justification." *Porter*, 947 F.3d at 451; *see also Clark*, 55 F.4th at 188 ("Allowing the claim to proceed acknowledges that Clark, by alleging his prolonged stay in solitary confinement was the result of prison officials knowingly disregarding the substantial risk of serious harm posed by the conditions and the foreseeable harm inflicted was in no way penologically justified, alleged the violation of a clearly established right."). The right to a due process liberty interest for inmates in prolonged and indefinite solitary confinement is also clearly established. *Porter*, 947 F.3d at 450. Therefore, Little and Bickel are not entitled to qualified immunity.

## Conclusion

Because Wayne does not allege facts showing that Clark, Oberlander, Sorber and Estock were personally involved in the decision to place him on the RRL or in the RHU and IMU, the claims against them will be dismissed. He has alleged sufficient facts stating claims for violation of his Eighth Amendment right to be free from cruel and unusual punishment, and violation of his Fourteenth Amendment due process right against the remaining defendants.