**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| JOHN WAYNE , | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-cv-4209 |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW, this _____ day of _____, 2023, upon consideration of the Motion of Commonwealth Defendants Wetzel, Little, Bickell, Harry and Ferguson, it is hereby ORDERED that that the Motion is GRANTED. All claims against Commonwealth Defendants are hereby DISMISSED.

**BY THE COURT:**

_____
Savage, J.

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN WAYNE , | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-cv-4209 |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

### COMMONWEALTH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants Wetzel, Bickell, Little, Harry and Ferguson (hereinafter "Commonwealth Defendants"), move for Summary Judgment pursuant to Fed. R. Civ. P. 56. The reasons for this Motion are stated in the accompanying memorandum of law.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

Date: November 28, 2023          By:   */s/ Sarina Kaplan*

Sarina Kaplan
Senior Deputy Attorney General
Attorney I.D. No. 209738

Office of Attorney General
1600 Arch Street, Suite 300
Philadelphia, PA 19103
Phone: (267) 768-3964
Fax:    (717) 772-4526
skaplan@attorneygeneral.gov

Karen M. Romano
Chief Deputy Attorney General
Civil Litigation Section

1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| _____ | : | |
| JOHN WAYNE , | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-cv-4209 |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF COMMONWEALTH
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

---

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

COMMONWEALTH OF PENNSYLVANIA          BY: /s/ Sarina Kaplan_____
OFFICE OF ATTORNEY GENERAL            SARINA KAPLAN (Pa. No. 209738)
1600 Arch Street, Suite 300           Senior Deputy Attorney General
Philadelphia, PA 19103
Telephone:  (267) 768-3964            KAREN M. ROMANO
Fax:  (717) 772-4526                  Chief Deputy Attorney General
skaplan@attorneygeneral.gov           Chief, Litigation Section

1

**TABLE OF CONTENTS**

I.     INTRODUCTION..................................................................5

II.    STATEMENT OF FACTS ......................................................5

III.   ARGUMENT ........................................................................8

  A.  APPLICABLE STANDARD OF LAW ................................8

  B.  PLAINTIFF FAILS TO STATE A CLAIM PURSUANT TO §1983 ..........9

      1.  Commonwealth Defendants Are Not A 'Person' Subject To Suit For Damages Under § 1983 ..........................................9

      2.  No Personal Involvement Alleged Against Defendants Little, Harry or Ferguson.......................................................10

          a.  Little Neither Created The IMU Nor Approved/Reviewed Plaintiff For RRL ......................................................10
          b.  Harry Neither Created The IMU Nor Retained Any Authority Over The RRL ...............................................11
          c.  Ferguson Neither Created The IMU Nor Reviewed Plaintiff For Placement, Continuation Or Release From The RRL.......................11

      3.  Plaintiff's Claims For Declaratory And Injunctive Relief Are Moot......11

          a.  No Objective Evidence Of A Sufficiently Serious Deprivation..........15
          b.  No Deliberate Indifference To Inmate Health Or Safety .................17

      4.  Plaintiff's Claim For Violation of Procedural Due Process Pursuant To Fourteenth Amendment, Fails On The Merits...........................18

      5.  Plaintiff's Claim of Violation of Substantive Due Process Barred Where Covered By Plaintiff's Eighth Amendment Claims.................................22

      6.  Plaintiff's Claim of Violation of Substantive Due Process Pursuant to Fourteenth Amendment, Fails on the Merits .............................23

  C.  Qualified Immunity Bars Plaintiff's Claims Against The Commonwealth Defendants ......................................................25

IV.   CONCLUSION ...................................................................28

# TABLE OF AUTHORITIES

## Cases

*A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572 (3d Cir. 2004) ........................ 12

*Akbar v. Watson*, 4 F.3d 195 (3d Cir.1993) ................................................................................ 14

*Albright v. Oliver*, 510 U.S. 266 (1994) ............................................................................... 24, 25

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................................................................... 27, 28

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ................................................................ 10

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ....................................................... 10

*Argueta v. U.S. Immig. & Customs Enf.*, 643 F.3d 60 (3d Cir. 2011) ........................................ 12

*Betts v. New Castle Youth Dev.* Ctr., 621 F.3d 249 (3d Cir. 2010)............................................. 24

*Blount v. Mason*, CIVIL ACTION NO. 3:22-0056, 2023 WL 6276680 (M.D.Pa. Sept.26, 2023)
    ................................................................................................................................................ 18

*Booze v. Wetzel,* Civil Action No. 1:13-cv-02139, 2014 WL 1515562 (M.D. Pa. Apr. 17, 2014)
    ................................................................................................................................................ 17

*Brosseau v. Haugen*, 543 U.S. 194 (2004) ................................................................................. 28

*Celotex Corp. v. Catrett*, 477 U.S. 317 (1986) ......................................................................... 10

*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) ................................................................. 10

*Clarke v. Lane*, 267 F.R.D. 180 (E.D.Pa. 2010) ...................................................................... 14

*Commonwealth v. Bullock*, 590 Pa. 480 (2006)......................................................................... 25

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998)........................................................... 25, 26

*Daniels v. Williams*, 474 U.S. 327 (1986) ........................................................................... 17, 26

*Davis v. Pennsylvania Department of Corrections*, Civil Action No. 05-1558, 2006 WL 2927631
    (W.D.Pa. October 12, 2006) ............................................................................................... 25

*Delaware Riverkeeper Network v. Sec'y Pennsylvania Dep't of Environmental Protection*, No.
    15-2122, No. 15-2158, 833 F.3d 360 (3d Cir. Aug. 8, 2016) ................................................ 13

*Estate of Smith v. Marasco*, 318 F.3d 497 (3d Cir. 2003) ......................................................... 10

*Farmer v. Brennan*, 511 U.S. 825 (1994) ........................................................................... 17, 20

*Finberg v. Sullivan*, 658 F.2d 93 (3d Cir. 1980).......................................................................... 14

*Fraise v. Terhune*, 283 F.3d 506, 523 (3d Cir.2002)); Griffin v. Vaughn, 112 F.3d 703 (3d Cir.
    1997) .................................................................................................................................... 22

*Galda v. Bloustein*, 686 F.2d 159 (3d Cir. 1982)........................................................................ 14

*Giles v. Kearney*, 571 F.3d 318 (3d Cir. 2009).......................................................................... 29

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................................... 24

*Griffin v. Vaughn,* 112 F.3d 703 (3d Cir. 1997) ......................................................................... 26

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982) ............................................................................... 27

*Hewitt v. Helms*, 459 U.S. 460 (1983) ....................................................................................... 21

*Hope v. Pelzer*, 536 U.S. 730 (2002) ........................................................................................ 27

*Hudson v. McMillian*, 503 U.S. 1 (1992) ............................................................................. 17, 20

*Hutto v. Finney*, 437 U.S. at 685 (1978)................................................................................... 16

*Johnson v. Wetzel*, 209 F. Supp. 3d 766 (M.D. Pa. 2016) ......................................................... 17

*Malley v. Briggs*, 475 U.S. 335 (1986) ..................................................................................... 28

*Meachum* v. Fano, 427 U.S. 214 (1976) .................................................................................... 21

*Michtavi v. Scism*, 808 F.3d 203 (3d Cir. 2015) ......................................................................... 28

*Miller v. City of Philadelphia*, 174 F.3d 368 (3d Cir.1999) ...................................................... 26

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) .................................................................................. 27

*Morrissey v. Brewer*, 408 U.S. 471 (1972) ............................................................................... 21

*Mullenix v. Luna,* 577 U.S. 7 (2015)................................................................................ 28

*Navolio v Lawrence County*, 406 Fed.Appx. 619 (3d Cir. 2011) ........................................ 26, 27

*Newman v. Beard*, 617 F.3d 775 (3d Cir.2010) ............................................................ 26

*Nicini v Morra*, 212 F.3d 798 (3d Cir. 2000).................................................................. 11

*Pearson v. Callahan*, 555 U.S. 223 (2009)................................................................ 27, 28, 29

*Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431 (3d Cir. 2020) ....................................... 18, 19, 21

*Preiser v. Newkirk*, 422 U.S. 395 (1975)........................................................................ 14

*Reaves v Rossman*, CIVIL ACTION NO. 3:21-cv-01282, 2022 WL 18539772 (M.D.Pa. Jul 1, 2022) ...................................................................................................... 17, 21, 23

*Reichle v. Howards*, 566 U.S. 658 (2012) ...................................................................... 28

*Rhodes v. Chapman*, 452 U.S. 337 (1981)................................................................... 17, 20

*Rode v. Dellarciprete*, 845 F.2d 1195 (3d Cir. 1988) ..... 12*Sandin v. Conner*, 515 U.S. 472 (1995) ................................................................................................................ 17, 21

*Sanford v. Stiles*, 456 F.3d 298 (3d Cir. 2006) ............................................................. 26, 27

*Santiago v. Warminster Twp.*, 629 F.3d 121 (3d Cir. 2010) ............................................. 12

*Saucier v. Katz,* 533 U.S. 194 (2001) ....................................................................... 29

*Schieber v. City of Phila.*, 320 F.3d 409 (3d Cir. 2003) ................................................. 26

*Scott v. Harris*, 550 U.S. 372 (2007) ....................................................................... 10, 27

*Sharp v. Johnson*, 669 F.3d 144 (3d Cir. 2012)........................................................... 29

*Shoats v. Horn*, 213 F.3d 140 (3d Cir.2000)............................................................ 21, 23

*Shoatz v. Wetzel*, Civil Action No. 2:13-cv-0657, 2016 WL 595337 (W.D. Pa. Feb. 12, 2016).. 18

*Simon v. Wetzel*, C.A. No. 17-224 Pittsburgh, 2018 WL 10230019 (W.D. Pa. Aug. 10, 2018) .. 18

*Simonton v Tennis*, 437 Fed.Appx. 60 (3d Cir. 2011) ..................................................... 11

*Sosna v. Iowa*, 419 U.S. 393 (1975 ......................................................................... 14

*Stanton v. Sims*, 571 U.S. 1 (2013) ............................................................................ 28

*Sutton v Rasheed,* 323 F.3d 236 (3d Cir. 2003) ............................................................ 14

*Talbert v Shapiro*, CIVIL ACTION NO. 23-2262, 2023 WL 4564778 (E.D.Pa. July 14, 2023). 21

*Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410 (3d Cir. 2000)........................... 17, 20

*Tindell v. Department of Corrections,* 87 A.3d 1029 (Comm. Pa. 2014)............................. 16, 19

*Torrealba v. Hogsten*, No. 3:CV-06-0108, 2009 WL 3242293 (M.D. Pa. Oct. 8, 2009)............ 22

*United* States Parole Commission v. Geraghty, 445 U.S. 388 (1980) ...................................... 14

*United States Parole Comm'n v. Geraghty*, 445 U.S. 388 (1980) .......................................... 14

*United States v. Lanier*, 520 U.S. 259 (1997)................................................................. 24

*Walker v. Mathis*, C.A. No. 15-5134, 2016 WL 2910082 (E.D. Pa. May 19, 2016)................... 12

*Washington v. Glucksberg*, 521 U.S. 702 (1997) ........................................................... 25

*Washington-El v. Beard*, 562 Fed. App'x 61 (3d Cir. 2014)................................................ 23

*Wilson v. Seiter*, 501 U.S. 294 (1991)....................................................................... 16, 17, 20

*Young v. Beard*, 227 F. App'x 138 (3d Cir.2007) ...................................................... 22, 26

*Zappan v. Pennsylvania Bd. of Probation and Parole*, 152 F. App'x 211 (3d Cir. 2005)...... 20, 21

*Zelinski v. PA State Police*, 282 F.Supp.2d. 251 (M.D. Pa. 2003)      11

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................ 7, 10

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

---

| | | |
|---|---|---|
| JOHN WAYNE , | : | |
| | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | No. 21-cv-4209 |
| | : | |
| JOHN E. WETZEL, *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**MEMORANDUM OF LAW IN SUPPORT OF
COMMONWEALTH DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendant Wetzel, Bickell, Little, Harry and Ferguson (hereinafter "Commonwealth Defendants"), by the undersigned counsel, respectfully submit this memorandum of law in support of Commonwealth Defendants' Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56.

**I.    INTRODUCTION**

Commonwealth Defendants moves to dismiss Plaintiff's Second Amended Complaint on multiple grounds including failure to allege personal involvement, mootness, and failure to state claims under the Eighth and Fourteenth Amendments.

**II.    STATEMENT OF FACTS**

Commonwealth Defendants incorporate herein by reference their Statement of Undisputed Material Facts (hereafter "Defs' SMF") filed on this date and the exhibits thereto (Doc. No. ECF 73).[1]

---

[1] All citations in this brief to exhibits refer to the exhibits to Defendants' SMF and all terms defined therein shall have the same meaning in this brief.

In short, Plaintiff is an inmate at SCI-Phoenix who has an extremely violent propensity. Plaintiff has 44 upheld misconducts since his imprisonment.  Plaintiff's 3 violent attacks on 3 different inmates on September 3, 2017, with a lock attached to an extension cord, led to Plaintiff's placement on the Restricted Release List on December 22, 2017.  Plaintiff thereafter continued to incur numerous misconducts, including 4 for assault.

Plaintiff was placed in the newly created IMU at SCI-Phoenix in July 2021. The IMU was created specifically to reintegrate RRL inmates back into general population.  The IMU has 6 phases that an inmate works through and, with each phase of the program, receives more out-of-cell time and additional privileges.  Once an inmate successfully works his way through Phase 2 of the program, the inmate is released from the RRL to complete Phase 1 of the program in general population, with all of the same privileges as those inmates already in general population.  Plaintiff was provided an IMU handbook, which provides him a clear path to his reintegration into the general population, including behavior expectations, and programs and coursework that need to be completed and approved, for progression.

Plaintiff has been thriving in the Intensive Management Unit, having made his way down from Phase 5, to Phase 2, which will occur in a matter of days, on December 5, 2023.  Phase 2 is the last phase of the RRL and is only 8 months' in duration.  Assuming Plaintiff remains misconduct-free and completes his IMU programming over the next 8 months, Plaintiff is scheduled to be removed from RRL and placed back into general population by August 2024.

Plaintiff is far from conditions that he could qualify as solitary confinement.  In Phase 2, Plaintiff will have the following privileges: 3 hours per day of exercise, out of cell, 7 days per week, with up to 2-3 other inmates; 4 phone calls per week; 4 tablet/kiosk (email) connections per week; up to 6 video visits per month; tv/radio privileges; participation in group treatment; weekly unit management contact and psychological contact as required by DOC 13.8.1; showers

5 times per week; increased spending limit in commissary; group study; access to mini law library and 3 recreational books; ability to congregate in small groups for games like chess, checkers and dominoes; ability to participate in employment; and one meal per day with other Phase 2 or 3 inmates.

Plaintiff's claims of solitary confinement are simply not applicable to the status that Plaintiff currently enjoys, nor was it applicable even when Plaintiff was in the most restrictive phase of the IMU because, even in the most restricted phase, Plaintiff could not qualify his restrictions as solitary confinement with the amount of out-of-cell exercise time, interaction with staff, psychologists, counselors, chaplains, other similarly situated inmates, and outside friends and family, that increase with each phase of the program.

Plaintiff meets for regular reviews with the Program Review Committee (PRC) for all of his program codes, and for progression through the phases of the IMU.  During his meetings with the PRC, Plaintiff can ask questions about his status.  Plaintiff can also ask staff on the block, such as his counselor about his status. Plaintiff is reviewed annually for his RRL status, which he will maintain only until Plaintiff completes the IMU program, which could be as early as 2024.

No Constitutional violations have occurred and Plaintiff has suffered no harm.  Plaintiff continues to have the highest health stability code and specifically denied any depression, anxiety, or mania.  Plaintiff's future on the RRL remains in his own hands, as he, himself, admitted, and the path toward general population has been provided to him.

## III. ARGUMENT

### A.      Applicable Standards of Review

A party is entitled to summary judgment if it can show "that there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A movant that will not bear the burden of proof on an issue at trial satisfies its initial responsibility on summary judgment by "'showing'—that is, pointing out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). In that situation, a movant is entitled to summary judgment if the nonmoving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case." *Id.* at 322. "[A] party opposing summary judgment must present *affirmative* evidence—whether direct or circumstantial—to defeat summary judgment, and may not rely simply on the assertion that a reasonable jury could discredit the opponent's account." *Estate of Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003) (emphasis in original). The Court must view the evidence presented in the light most favorable to the nonmoving party. *Anderson*, 477 U.S. at 255. However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Id.* (citing *Anderson, 477* U.S. at 247–248).

**B.  Plaintiff Fails To State A Claim Pursuant To Section 1983**

Plaintiff's allegations do not sufficiently support any violations of § 1983.  In order to establish a § 1983 claim, a plaintiff must demonstrate that: (1) the conduct complained of was committed by persons acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States.  *Simonton v Tennis*, 437 Fed.Appx. 60, 61-62 (3d Cir. 2011) (citing *Nicini v Morra*, 212 F.3d 798, 806 (3d Cir. 2000), 42 U.S.C. § 1983.  Plaintiff has not presented evidence that Commonwealth Defendants deprived Plaintiff of any right, privilege or immunity.

**1.  Commonwealth Defendants Are Not A 'Person' Subject To Suit For Damages Under § 1983**

To the extent Commonwealth Defendants have been sued in their official capacities for damages under 42 U.S.C. § 1983, the claims fail, as state employees in their official capacities are not considered "person[s]" amenable to suit for purposes of a damages claim under § 1983.[2] *Will v. Michigan Dept. of St. Police,* 491 U.S.59.69-71, & n.10 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Zelinski v. PA State Police*, 282 F.Supp.2d. 251, 264 n.14 (M.D. Pa. 2003), *aff'd in part, vacated in part on other grounds*, 108 Fed. Appx. 700 (3d Cir. 2004) (same).  The DOC is an executive agency of the Commonwealth, 71 P.S. §§ 61, 732-102, and Commonwealth Defendants are all DOC employees.  As an employee of a Commonwealth executive agency, they may not be sued in their official capacities for damages; to the extent the Second Amended Complaint seeks that, such claims must be dismissed.

---

[2] 42 U.S.C. § 1983 provides a cause of action against any "<u>person</u> who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected" any person to the deprivation of any right protected by federal law or the United States Constitution (emphasis added).

### 2.   No Personal Involvement Alleged Against Defendants Little, Harry or Ferguson

Section 1983 requires the personal involvement of individual defendants in any alleged wrongdoing, not mere *respondeat superior* liability. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *Argueta v. U.S. Immig. & Customs Enf.*, 643 F.3d 60, 73 (3d Cir. 2011).  In other words, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Further, where a pleading states "no factual allegations whatsoever" against an individual defendant, dismissal is appropriate. *Walker v. Mathis*, C.A. No. 15-5134, 2016 WL 2910082, at *7 (E.D. Pa. May 19, 2016).

Each defendant must have played an "affirmative part" in the complained-of misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).  Supervisory liability may attach if the supervisor personally "participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced" in a subordinate's unconstitutional conduct. *A.M. ex rel. J.M.K. v. Luzerne Cty. Juv. Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (citation omitted). *See Rode v. Dellarciprete*, 892 F.2d 1171 (3d Cir. 1990).  Plaintiff's "mere restatements of the elements of [a] supervisory liability claim [is] not entitled to the assumption of truth." *Santiago v. Warminster Twp.*, 629 F.3d 121, 132 (3d Cir. 2010).

### a.   Little Neither Created The IMU Nor Approved/Reviewed Plaintiff For RRL

George Little was the Acting Secretary of the Department of Corrections from October 2021, until March 2023.  Defs' SMF, ¶77. One month into Little's tenure, Little delegated the final decision-making responsibilities for the placement, continuation and removal from the RRL, to EDSI Bickell.  Defs' SMF, ¶80.  Little only reviewed one RRL inmate, who was not Plaintiff, during the one month in which he retained final decision-making authority on the

placement, continuation and removal of inmates from the RRL.  Defs' SMF, ¶¶79-82. Little did

not know or review Plaintiff's file for RRL Annual Review.  *Id.* Little never exerted any decision

at all about Plaintiff's status on the RRL.  *Id.*  Little also had nothing at all to do with the

inception of the IMU, the programming contained in the IMU, or the continuation of the IMU.

*Id.*

### b. Harry Neither Created The IMU Nor Retained Any Authority Over The RRL

In March 2023, Laurel Harry replaced George Little, becoming Acting Secretary of the

Department of Corrections.  Defs' SMF, ¶83.  The final decision-making authority of the

placement, continuation and removal of inmates from the RRL had already been delegated to the

EDSI prior to Harry's tenure. Defs' SMF, ¶¶80, 83-84.  Harry has never reviewed Plaintiff's

status on the RRL, never made any decisions with regard to Plaintiff's placement, continuation

or removal from the RRL, nor maintained any authority to make any decision whatsoever with

regard to inmates' placements on RRL.  Defs' SMF, ¶¶80, 84-85.

### c. Ferguson Neither Created The IMU Nor Reviewed Plaintiff For Placement, Continuation Or Release From The RRL

In April 2023, Tammy Ferguson replaced Tabb Bickell as the Acting EDSI until her

retirement in November 2023.  Defs' SMF, ¶86.  During her short tenure of less than on year,

Ferguson never reviewed Plaintiff for his continued placement on the RRL because Plaintiff's

review did not occur during Ferguson's tenure.  Defs' SMF, ¶87.

### 3. Plaintiff's Claims For Declaratory And Injunctive Relief Are Moot

Under Article III, mootness is a basic principle that a justiciable case or controversy must

remain extant at all stages of review.  *Delaware Riverkeeper Network v. Sec'y Pennsylvania

Dep't of Environmental Protection*, No. 15-2122, No. 15-2158, 833 F.3d 360, 374 (3d Cir. Aug.

8, 2016).  "[A] federal court has neither the power to render advisory opinions nor to decide

questions that cannot affect the rights of litigants in the case before them." *Sutton v Rasheed,* 323 F.3d 236, 248 (3d Cir. 2003) (citing *Preiser v. Newkirk,* 422 U.S. 395, 401 (1975) (quotations omitted); *see also Abdul–Akbar v. Watson,* 4 F.3d 195, 206 (3d Cir.1993). "[M]ootness has two aspects: (1) the issues presented are no longer "live" or (2) the parties lack a cognizable interest in the outcome." *Id.* (citing *United States Parole Commission v. Geraghty*, 445 U.S. 388, 396 (1980)). On this basis " 'a case becomes moot if (1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effect of the alleged violation.' " *Id.* (quoting *Finberg v. Sullivan*, 658 F.2d 93, 97-98 (3d Cir. 1980); *Galda v. Bloustein*, 686 F.2d 159, 162-63 (3d Cir. 1982)).   Federal courts' jurisdiction is limited for mootness "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome" (the personal stake requirement). *Clarke v. Lane*, 267 F.R.D. 180, 189 (E.D.Pa. 2010) (citing *United States Parole Comm'n v. Geraghty,* 445 U.S. 388, 396 (1980) (internal citation omitted)).  Mootness must be satisfied in order to satisfy the "case and controversy" requirement under Article III. *Id.* (citing *Sosna v. Iowa,* 419 U.S. 393, 402 (1975).

Plaintiff filed his original Complaint in September 2021, before he was placed in the IMU on December 9, 2021. Plaintiff's Complaint, ECF 1; Defs' SMF, ¶58.  In the IMU, Plaintiff was given a path back toward general population, with opportunities for increased privileges. Defs' SMF, ¶¶17-22.

Plaintiff filed his Amended Complaint on May 24, 2022, after he was placed in the in the IMU program at SCI-Phoenix, but while he was still in Phase 5, with more limited privileges than he currently enjoys. Plaintiff's Amended Complaint, ECF 29; Defs' SMF, ¶¶58, 60.

Plaintiff only recently filed a Second Amended Complaint, after completion of all discovery, on November 9, 2023, at which time, Plaintiff had worked his way through the IMU

program, down to Phase 3 of the program, where he enjoyed even more privileges than he had since the time of his Amended Complaint in May 2022. Plaintiff's Second Amended Complaint, ECF 67, Defs' SMF, ¶¶62, 63.

Plaintiff, by his own admission, is scheduled to progress to Phase 2 on December 5, 2023, very likely before this Motion is decided. Defs' SMF, ¶64.  Phase 2 is the last Phase of the IMU before Plaintiff is released from the RRL. Defs' SMF, ¶¶30-31.  Phase 2 has the most limited restrictions, and the most privileges, on the IMU before being transferred to general population for Phase 1 of the IMU.  Defs' SMF, ¶¶30-31.  If Plaintiff successfully completes Phase 2 of the IMU, Plaintiff will be removed from the RRL by August 2024.  Defs' SMF, ¶70.

In other words, the interim events, Plaintiff's move to the IMU and ever-evolving additional privileges earned along the way through his completion of each phase of the IMU, have completely and irrevocably eradicated the effect of the alleged violation.  ***Plaintiff is not placed on the RRL indefinitely***.  Plaintiff's privileges and restrictions are constantly evolving. Plaintiff cannot claim that he is, or was, in solitary confinement, or even that he was, or is, placed in conditions that could be construed as solitary confinement.  In Phase 2 of the IMU, Plaintiff will enjoy the following privileges: 3 hours per day of exercise, out of cell, 7 days per week, with up to 2-3 other inmates; 4 phone calls per week; 4 tablet/kiosk (email) connections per week; up to 6 video visits per month; tv/radio privileges; participation in group treatment; weekly unit management contact and psychological contact as required by DOC 13.8.1; showers 5 times per week; increased spending limit in commissary; group study; access to mini law library and 3 recreational books; ability to congregate in small groups for games like chess, checkers and dominoes; ability to participate in employment; and one meal per day with other Phase 2 or 3 inmates. Defs' SMF, ¶30.

With Plaintiff's placement in the IMU, since the time he filed his original Complaint, Plaintiff's fate on the RRL, by Plaintiff's own admission, has been put into his own hands, Defs' SMF, ¶66, and Plaintiff's claims before this Court are moot. Accordingly, Commonwealth Defendants request that Plaintiff's claims for injunctive and declaratory are dismissed accordingly. At a minimum, Commonwealth Defendants, Wetzel, Little, Bickell and Ferguson can no longer take action as they are all retired and no longer work at the Department of Corrections. Defs' SMF, ¶¶77-78, 86. Commonwealth Defendant Harry maintains no authority at all over the RRL or inmates placed on the RRL and, therefore, she too cannot take any action requested in Plaintiff's relief. Defs' SMF, ¶85.

### 3. Plaintiff's Claim Of Violation Of Eighth Amendment Fails On The Merits

In order to establish that prison conditions violate the Eighth Amendment a prisoner must establish that prison officials were deliberately indifferent to conditions of confinement that constitute cruel and unusual punishment. *Tindell v. Department of Corrections,* 87 A.3d 1029, 1041 (Comm. Pa. 2014) (citing *Wilson v. Seiter,* 501 U.S. 294, 303 (1991)). The Court has cautioned that not "all prison conditions are a seamless web for Eighth Amendment purposes. *Id.* Nothing so amorphous as 'overall conditions' can rise to the level of cruel and unusual punishment when no specific deprivation of a single human need exists." *Id.* Moreover, the use of restricted housing units or isolation cells, alone, has been found not to be a violation of the Eighth Amendment ban on cruel and unusual punishment. *Hutto v. Finney,* 437 U.S. at 685, 687 (1978); *Rivera v. Pennsylvania Department of Corrections,* 837 A.2d 525 (Pa.Super.2003) (holding conditions of confinement in long term segregation unit did not constitute cruel and unusual punishment).

The Supreme Court adopted a two-pronged test for determining whether a prison official violated the Eighth Amendment. The first prong is an objective determination of whether the

deprivation is "sufficiently serious" such that the official's act or omission resulted "in the denial of the minimal civilized measure of life's necessities." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Life's necessities include "food, clothing, shelter, medical care, and reasonable safety." *Tillman v. Lebanon Cty. Corr. Facility*, 221 F.3d 410, 418 (3d Cir. 2000)."  While the Eighth Amendment directs that convicted prisoners not be subjected to cruel and unusual punishment, "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman*, 452 U.S. 337, 349 (1981). Only "extreme deprivations" are sufficient to establish a conditions of confinement claim. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). The second prong is a subjective test of whether the official has a "sufficiently culpable state of mind," that of "deliberate indifference to inmate health or safety." *Farmer*, 511 U.S. at 834; *Wilson v. Seiter,* 501 U.S. 294, 298 (1991).

### a.   No Objective Evidence Of A Sufficiently Serious Deprivation

The bare assertion that Plaintiff has been placed on the RRL since 2017, and now placed in the IMU, does not, alone, violate the Eighth Amendment.  It is well established that mere placement on the RRL, invoking more restricted housing, does not, itself, constitute a violation of the Eighth Amendment. *Reaves v. Rossman*, CIVIL ACTION NO. 3:21-cv-01282, 2022 WL 18539772, *5 (M.D. Pa. July 1, 2022) (citing *Booze v. Wetzel*, Civil Action No. 1:13-cv-02139, 2014 WL 1515562, at *4 (M.D. Pa. Apr. 17, 2014). To establish an Eighth Amendment claim, Plaintiff must adduce evidence ***beyond the mere fact that he was placed on the RRL***. *See id.* Placement in restrictive housing is not an "atypical and significant hardship … in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 483 (1995).

The Pennsylvania Federal Courts have considered what the baseline is, that constitutes an "atypical and significant hardship" and Plaintiff's claims do not fall into this category.  The courts have recognized that the *duration* of solitary confinement may be a consideration in some extreme cases. *See, e.g.*, *Johnson v. Wetzel*, 209 F. Supp. 3d 766 (M.D. Pa. 2016) (granting

preliminary injunction in favor of prisoner held in solitary confinement *for 36 years*); *Shoatz v. Wetzel*, Civil Action No. 2:13-cv-0657, 2016 WL 595337, at *7–*9 (W.D. Pa. Feb. 12, 2016) (denying summary judgment to prison officials where inmate had been held in administrative custody *for 22 years* and submitted ***specific and robust*** evidence regarding harm to his mental health). However, absent significant deprivations, the duration of confinement at issue here—approximately 3.5 years at the time the complaint was filed—is insufficient, standing alone, to establish a violation of the Plaintiff's Eighth Amendment rights. *See Simon v. Wetzel*, C.A. No. 17-224 Pittsburgh, 2018 WL 10230019, at *4 & n.7 (W.D. Pa. Aug. 10, 2018) (dismissing Eighth Amendment claim where inmate was confined in administrative custody and on the RRL for five years); *Blount v. Mason*, CIVIL ACTION NO. 3:22-0056, 2023 WL 6276680, *5 (M.D.Pa. Sept.26, 2023) (dismissing Eighth Amendment claim where inmate was confined in administrative custody and on the RRL for over two years before, but where plaintiff set forth no evidence that he was denied 'the minimal civilized measure of life's necessities, or that there was no legitimate penological objective for his placement).

This case can be distinguished from the recent Third Circuit decision to reverse a District Court's granting on a Motion for Summary Judgment conditions of confinement case because, in that case, plaintiff was placed in ***more*** restrictive housing, was placed for ***several decades more*** time, and remained on the RRL ***indefinitely***. *Porter v. Pa. Dep't of Corrs.*, 974 F.3d 431 (3d Cir. 2020).

Even with Plaintiff's generalized claim that his prolonged incarceration in "solitary confinement" has caused him to suffer "mentally and physically," specifically alleging that he experiences "anxiety, distress, and despair, and his physical condition has deteriorated…" and that he "has lost weight…suffers from elevated cholesterol…and he has been advised that he is at high risk for developing diabetes," Plaintiff has provided no evidence to corroborate this

claim.  In fact, to the contrary, at Plaintiff's most recent psychological evaluation, Plaintiff *specifically denied* significant mood issues, anxiety, depression or mania.  Defs' SMF, ¶75. Instead, Plaintiff's mood "appeared to be within normal limits and his affect was congruent to his mood." Defs' SMF, ¶74.  Plaintiff reported that he was maintaining healthy exercise and good eating and did not present as being in any type of psychological distress.  Defs' SMF, ¶75. Plaintiff in *Porter*, on the other hand, had established mental illness treated with medication. *Porter*, 974 F.3d at 437.

Plaintiff here, just as petitioner in *Tindell*, has failed to allege that he was "denied warmth, sleep, physical and mental health care, food, or clothing." *Tindell* 87 A.3d at 1042. Plaintiff makes no allegation that he was denied any medical treatment, and, although Plaintiff makes various claims about psychological and sleep disturbances, Plaintiff admits that he has never been to a physician to request treatment or medication for these complaints while he has been incarcerated.  Defs' SMF, ¶76.

### b.  No Deliberate Indifference To Inmate Health Or Safety

Plaintiff's Second Amended Complaint contains no allegation that any one of the Commonwealth Defendants knew of any physical or mental health concerns of Plaintiff, let alone that they failed to act upon those concerns.  In fact, Plaintiff has produced no evidence at all of any physical or mental health issues, as a result of his time on the RRL, or otherwise.

Although Plaintiff tried to corner Commonwealth Defendants into admitting that they have heard of, or known of, literature regarding generalized negative effects solitary confinement *may* contribute to for *some* individuals, Commonwealth Defendants unequivocally stated that Plaintiff's conditions of confinement in the IMU did not, and do not, constitute solitary confinement.  Defs' SMF, ¶67.  Plaintiff's psychological health is considered the highest level

and Plaintiff has specifically denied any mental health issues, anxiety or depression, and has never requested medication or treatment for any of these alleged issues.  Defs' SMF, ¶¶75-76.

By his own admission, before this Motion is even decided, Plaintiff will be moved to Phase 2 on December 5, 2023, where he will enjoy the following privileges: 3 hours per day of exercise, out of cell, 7 days per week, with up to 2-3 other inmates; 4 phone calls per week; 4 tablet/kiosk (email) connections per week; up to 6 video visits per month; tv/radio privileges; participation in group treatment; weekly unit management contact and psychological contact as required by DOC 13.8.1; showers 5 times per week; increased spending limit in commissary; group study; access to mini law library and 3 recreational books; ability to congregate in small groups for games like chess, checkers and dominoes; ability to participate in employment; and one meal per day with other Phase 2 or 3 inmates.  Defs' SMF, ¶¶30, 64,

Without having alleged a deprivation, which could be considered "sufficiently serious," and without alleging that any of the Commonwealth Defendants held a "sufficiently culpable state of mind," where Plaintiff's mental health was never problematic, and Plaintiff's conditions are not equivalent to solitary confinement, Plaintiff has failed to state a claim for a violation of the Eighth Amendment and Commonwealth Defendants respectfully requests that Plaintiff's claims against them be dismissed accordingly.  *Farmer*, 511 U.S. at 834; *Tillman*, 221 F.3d at 418; *Rhodes*, 452 U.S. at 349; *Hudson*, 503 U.S. at 9; *Wilson,* 501 U.S. at 298 (1991).

### 4.  Plaintiff's Claim For Violation of Procedural Due Process Pursuant To Fourteenth Amendment, Fails On The Merits

 "[D]ue process of law" essentially requires the government provide a person notice and opportunity to be heard in connection with the deprivation of life, liberty, or property.  *Zappan v. Pennsylvania Bd. of Probation and Parole*, 152 F. App'x 211, 220 (3d Cir. 2005).  To establish a due process claim under the Fourteenth Amendment, Plaintiff must first demonstrate the existence of a constitutionally protected liberty or property interest impaired by defendants'

actions. *Hewitt v. Helms*, 459 U.S. 460 (1983); *Morrissey v. Brewer*, 408 U.S. 471 (1972). The

Due Process Clause of the Fourteenth Amendment does not protect every change in

the conditions of confinement having a substantial adverse impact on a prisoner. *Meachum v.*

*Fano,* 427 U.S. 214, 224 (1976). As such, the initial inquiry presented by an inmate's due process

claim is whether defendants' actions impacted a constitutionally-protected liberty

interest. *Zappan*, 152 F. App'x at 220 (citing *Shoats v. Horn,* 213 F.3d 140, 143 (3d Cir.2000)).

If so, the question then becomes what process is due to protect the interest.  *Id.*

A liberty interest **may** arise when a prison's actions impose an "atypical and significant

hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* (citing *Shoats*, 213

F.3d at 143).  However, our Supreme Court has held that "segregated confinement d[oes] not

present the type of atypical, significant deprivation in which a State might conceivably create a

liberty interest."  *Talbert v Shapiro*, CIVIL ACTION NO. 23-2262, 2023 WL 4564778, *4

(E.D.Pa. July 14, 2023) (citing *Sandin*, 515 U.S.at 486).).  To determine whether disciplinary

segregation imposes such an "atypical and significant hardship," the Pennsylvania courts have

followed the U.S. Supreme Court's precedential considerations, which include: "(1) the duration

of the disciplinary confinement; and (2) whether the conditions of confinement were

significantly more restrictive than those imposed upon other inmates in solitary confinement."

*Talbert* 2023 WL 4564778 at *4 (citing *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972)).

The Third Circuit has only recognized a liberty interest in some **exceptional** cases where

the "solitary confinement" was **prolonged and indefinite**, with **no prospect for release**. *Reaves v*

*Rossman*, CIVIL ACTION NO. 3:21-cv-01282, 2022 WL 18539772, *6 (M.D.Pa. Jul 1, 2022)

(citing *Porter*, 974 F.3d at 449–50 (holding that inmate who had spent **33 years** in solitary

confinement had a due process liberty interest in avoiding further solitary confinement); *Shoats*

19

*v. Horn*, 213 F.3d at 143–44 (holding that inmate who had spent 8 years in solitary confinement in administrative custody **with no prospect of release** had a protected liberty interest)).

In the case at hand, Plaintiff is not, and has not been, under conditions of solitary confinement.  Plaintiff enjoys a variety of ever-increasing privileges in the IMU, which are explained in more detail above. Plaintiff is also not being held in the IMU indefinitely, nor has he been in restricted housing for a significant amount of time; Plaintiff was in restrictive housing for 3.5 years at the time that he filed the instant suit.  ECF 1.  Plaintiff is projected to be removed from RRL, and back in general population, by August 2024 if he continues to exhibit good behavior and complete the coursework in the IMU that has been tailored to him, to manage his previously violent proclivities.

Courts have found that placement in restrictive confinement for periods of one year and more do not implicate a constitutionally protected liberty interest on the basis that such duration does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life.  *See Torrealba v. Hogsten*, No. 3:CV-06-0108, 2009 WL 3242293, at *9 (M.D. Pa. Oct. 8, 2009) (concluding that prisoner's placement in administrative detention for two years did not constitute atypical or significant hardship);  *Jones v. Baker,* 155 F.3d 810 (6th Cir.1998) (administrative confinement for two and one-half years was not atypical and significant) (cited approvingly in *Fraise v. Terhune,* 283 F.3d 506, 523 (3d Cir.2002)); *Griffin v. Vaughn,* 112 F.3d 703, 707 (3d Cir. 1997) (finding it is not atypical to be exposed to conditions of administrative custody for a period of 15 months in that such stays are within the expected parameters of an inmate's sentence); *Young v. Beard,* 227 F. App'x 138 (3d Cir.2007) (finding that a 930 day sentence to disciplinary confinement where no atypical conditions were alleged failed to show a deprivation of a cognizable liberty interest).

Nevertheless, even if the Court finds that Plaintiff's continuation on the RRL, limited only to while he completes his IMU program, does implicate a protected liberty interest, Plaintiff has not sufficiently stated a claim for a violation of due process.  An inmate's initial placement or continued confinement on the RRL is subject to an administrative process set forth in DC-ADM 802, a state corrections department policy outlining procedures concerning administrative custody. Defs' SMF, ¶1; *Reaves*, 2022 WL 18539772 *6.  DOC policy provides for an inmate to receive written notice of the reason for placement in administrative custody within 24 hours of placement and an administrative hearing before the PRC within seven days. Defs' SMF, ¶2; *Id.* It provides for an administrative appeal process from the initial placement decision by the PRC to the facility superintendent, and from there to a statewide chief hearing officer. Defs' SMF, ¶3; *Id.*  After initial placement, the policy provides for periodic review of an inmate's confinement in administrative custody every 90 days, and an administrative process for appealing from those decisions as well. Defs' SMF, ¶4; *Id.*  It provides for annual review of an inmate's status on the RRL as well. Defs' SMF, ¶6; *Id.*  The Third Circuit has repeatedly held that the periodic review offered to Pennsylvania inmates who are ***indefinitely*** confined in administrative custody ***satisfies*** the requirements of procedural due process. *Reaves*, 2022 WL 18539772 *7 (citing *Shoats*, 213 F.3d at 144–47; *Washington-El v. Beard*, 562 Fed. App'x 61, 63 (3d Cir. 2014) (per curiam).

Here, the Second Amended complaint alleges in conclusory fashion only, that Defendants have "violated Mr. Wayne's rights under the Due Process Clause of the Fourteenth Amendment…by failing to provide Mr. Wayne with the reasons for his continued placement in solitary confinement and/or on the RRL; failing Mr. Wayne a meaningful opportunity to be heard in order to challenge his continued placement in solitary confinement and/or the RRL; and failing to inform Mr. Wayne of what is required of him to be released from solitary confinement and/or the RRL."  In addition to being factually inaccurate, this claim is legally inaccurate.

Defs' SMF, ¶¶4, 6, 29, 59.  To begin, Plaintiff has not offered any evidence of the DOC's failure

to advise Plaintiff of the reasons for his initial placement on the RRL.  *Id.*  To the contrary,

Plaintiff knew exactly why he was placed on RRL after his unprovoked assault on three inmates,

and testified as such.  Defs' SMF, ¶46.   Furthermore, the record is replete with meetings

between Plaintiff and the PRC to discuss Plaintiff's continued status on the RRL and the step-

down phases he was to, and did, achieve to gain more privileges and work his way back to

general population.  Defs' SMF, ¶¶58, 60, 62.   Plaintiff readily admitted that he knew the exact

date when he was going to be moved from Phase 3 to Phase 2 of the IMU, Dec 5, 2023, and then

from Phase 2 to Phase 1.  Defs' SMF, ¶64.   With regard to his placement on the RRL, Plaintiff

has had yearly reviews, which have consistently and unanimously voted to continue Plaintiff on

the RRL until his completion of the IMU.  Defs' SMF, ¶¶6, 46, 50, 51, 55.

      Without alleging any atypical conditions of his placement, Plaintiff has not implicated a

liberty interest and, even if the Court finds that a liberty interest was implicated, Plaintiff

received meaningful process for his continuation on the RRL and in the IMU.

### 5.   Plaintiff's Claim of Violation of Substantive Due Process Barred Where Covered By Plaintiff's Eighth Amendment Claims

      To the extent that Plaintiff intends his Fourteenth Amendment claim to be one based on

substantive due process, an independent Fourteenth Amendment substantive due process claim,

upon the same set of factual allegations upon which he makes his Eighth Amendment claim,

should be dismissed as duplicative. It is well-established that "if a constitutional claim is covered

by a specific constitutional provision, such as the Eighth Amendment, the claim must be

analyzed under the standard appropriate to that specific provision, not under the rubric of

substantive due process." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 260 (3d Cir. 2010)

(quoting *United States v. Lanier,* 520 U.S. 259, 272 n. 7 (1997)); *see also Albright v. Oliver,* 510

U.S. 266, 273 (1994) and *Graham v. Connor,* 490 U.S. 386 (1989). The Supreme Court "has

always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision-making in this unchartered area are scarce and open-ended." *Davis v. Pennsylvania Department of Corrections*, Civil Action No. 05-1558, 2006 WL 2927631, *10 (W.D.Pa. October 12, 2006) (citing *Albright v. Oliver,* 510 U.S. 266, 271-272 (1994) (plurality opinion). As a result of inadequate guideposts, the court has limited the availability of claims under substantive due process to those which are not covered by the legal tests and standards under other amendments. *Id.* (citing *County of Sacramento v. Lewis,* 523 U.S. 833 (1998)).

To the extent that Plaintiff makes a claim for violation of substantive due process, pursuant to the Fourteenth Amendment, the substantive due process claim is, and can only be, that the standards under the Eighth Amendment were violated by the Commonwealth Defendant's actions or inactions. Under *Albright* and its progeny, there is no additional or alternative claim that the Commonwealth Defendant's actions at issue, which are the same actions at issue in his Eighth Amendment claim, shock the conscience.

### 6.  Plaintiff's Claim of Violation of Substantive Due Process Pursuant to Fourteenth Amendment, Fails on the Merits

To the extent that Plaintiff is alleging a violation of substantive due process, in connection with the same facts as his Eighth Amendment claim, the claim lacks merit.  Under the heading of "substantive due process," the Due Process Clause "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Commonwealth v. Bullock*, 590 Pa. 480, 491, (2006) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 719-20, (1997)).  The Fourteenth Amendment's right to substantive due process requires the government to refrain from interfering with individuals' fundamental rights and from engaging in conscience-shocking conduct. *See Cty. of Sacramento*, 523 U.S. at 842, 845-46.  The due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm.  *Cty. of Sacramento v. Lewis*, 523

U.S. 848.  A claim alleging a substantive due process violation requires a showing of behavior that can "properly be characterized as arbitrary, or conscience shocking." *Cnty. of Sacramento v. Lewis,* 523 U.S. 833, 847; *see also Newman v. Beard,* 617 F.3d 775, 782 (3d Cir.2010) ("Conduct can violate substantive due process if it shocks the conscience, which encompasses only the most egregious official conduct.").  Conduct *intended* to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level. See *Daniels v. Williams,* 474 U.S. 327, 331 (1986).

While mere negligence is never enough to shock the conscience, *Navolio v Lawrence County,* 406 F. App'x 619, 624 (3d Cir. 2011) (citing *Schieber v. City of Phila.,* 320 F.3d 409, 419 (3d Cir. 2003)), "[t]he exact degree of wrongfulness necessary to reach the conscience-shocking level depends upon the circumstances of a particular case." *Miller v. City of Philadelphia,* 174 F.3d 368, 375 (3d Cir.1999). In a "hyper-pressurized environment," an intent to cause harm is usually required. *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006).  On the other hand, in cases where deliberation is possible and officials have the time to make "un-hurried judgments," deliberate indifference is sufficient. *Navolio v Lawrence County,* 406 F. App'x at 624 (citing *Sanford,* 456 F.3d at 309).

In this case, where deliberation was possible, the relevant standard is that of deliberate indifference.  Thus, the relevant question is not whether Commonwealth Defendants ***should have*** removed Plaintiff from the RRL, but rather, under the circumstances, did Commonwealth Defendants' actions, or in this case – inaction -- shock the conscience.  *Sanford,* 456 F.3d at 311. The Third Circuit has already ruled on this issue, determining that placement on the RRL for periods in excess of one year, does not constitute an atypical and significant hardship in relation to the ordinary incidents of prison life. *See Griffin v. Vaughn,* 112 F.3d 703, 707 (3d Cir. 1997);*Young v. Beard,* 227 F. App'x 138 (3d Cir.2007).

Second, Commonwealth Defendants cannot be said to have "disregarded" any risk that Plaintiff presented.  *Sanford,* 456 F.3d at 311.  The record is void of any instances in which Plaintiff alerted Commonwealth Defendants to issues regarding Plaintiff's mental or physical health that were ignored.  Defs' SMF, ¶¶73, 75.  Plaintiff had a positive mental health rating, no suicidal ideation, and has never requested any medical treatment whatsoever for any claims of anxiety, depression, or sleep disturbances. Defs' SMF, ¶¶73, 75.

For these reasons, Plaintiff cannot show that Commonwealth had either deliberate indifference or to consciously disregarded a great risk of harm.  *Navolio v Lawrence County*, 406 Fed.Appx. 619 (3d Cir. 2011).  To the extent that any of Plaintiff's claims allege a violation of substantive due process pursuant to the Fourteenth Amendment, Commonwealth Defendants respectfully request that they be dismissed against them.

## C.  Qualified Immunity Bars Plaintiff's Claims Against The Commonwealth Defendants

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "Because qualified immunity is 'an immunity from suit rather than a mere defense to liability ... it is effectively lost if a case is erroneously permitted to go to trial.'" *Pearson* at 815 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).  "[The Supreme Court] ha[s] repeatedly stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Scott v. Harris*, 550 U.S. 372, 376 n.2 (2007) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).

"For a constitutional right to be clearly established, its contours 'must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

"[T]he right allegedly violated must be established, 'not as a broad general proposition,' but in a 'particularized' sense so that the 'contours' of the right are clear to a reasonable official." *Reichle v. Howards*, 566 U.S. 658, 665 (2012) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam); *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).  As the Third Circuit recently explained, "[i]n determining whether a properly tailored definition of the right at issue is clearly established, the Court must consider whether 'existing precedent [has] placed the statutory or constitutional question beyond debate.'"  *Michtavi v. Scism*, 808 F.3d 203, 207 (3d Cir. 2015) (quoting *Mullenix v. Luna,* 577 U.S. 7 (2015) (per curiam) (reversing district court's denial of qualified immunity because it did not use appropriate level of specificity).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and 'protects all but the plainly incompetent or those who knowingly violate the law.'" *Stanton v. Sims*, 571 U.S. 1 (2013) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011)).  "The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." *Pearson*, 129 S.Ct. at 815 (internal quotation marks omitted).

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson*, 555 U.S. at 231 (internal quotation marks omitted). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson*, 555 U.S. at 231. It "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Thus, so long as an official reasonably believes that his conduct complies with the law,

qualified immunity will shield that official from liability." *Sharp v. Johnson*, 669 F.3d 144, 159 (3d Cir. 2012) (citing *Pearson, 555* U.S. at 244). Although qualified immunity is generally a question of law that should be considered at the earliest possible stage of proceedings, a genuine dispute of material fact may preclude summary judgment on qualified immunity. *Giles v. Kearney*, 571 F.3d 318, 325-26 (3d Cir. 2009).

A qualified immunity determination involves a two-pronged inquiry: (1) whether a constitutional or federal right has been violated; and (2) whether that right was "clearly established." *Saucier v. Katz*, 533 U.S. 194, 201 (2001), *overruled in part by Pearson, 555* U.S. at 236 (permitting federal courts to exercise discretion in deciding which of the two *Saucier* prongs should be addressed first). Because there are no genuine issues of fact as to whether a constitutional or federal right has been violated, Commonwealth Defendants are protected by qualified immunity.

Here, precedential case law establishes that Commonwealth Defendants did not violate any clearly established right. To the contrary, case law, as elaborated in more detail above, suggests that Commonwealth Defendants were well within their official and individual duties to safely and securely house inmates that present safety issues to personnel and other inmates through the use of restricted housing units. Furthermore, there has been no precedential case law at all that suggests that Plaintiff's present housing assignment in the IMU, a phased program designed to grant more privileges and, ultimately, re-integrate inmates back into general population, with good behavior and completion of tailored coursework to reduce violent proclivities, violates any constitutional rights. The IMU is neither solitary confinement, nor indefinite. Rather, Plaintiff has a very clear sense of when he will move to every next step of the program until his release from the Restricted Release List in August 2024. Defs' SMF, ¶¶59, 66, 69.

**V.      CONCLUSION**

Based on the foregoing, Commonwealth Defendants respectfully request that this Court grant their Motion for Summary Judgment, and all claims against them be dismissed accordingly.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

/s/  Sarina Kaplan
_____

Office of Attorney General              Sarina Kaplan
1600 Arch Street, Suite 300             Senior Deputy Attorney General
Philadelphia, PA 19103                  Attorney I.D. No. 209738
Phone: 215-560-2127
Fax: 717-772-4526                       Karen M. Romano
skaplan@attorneygeneral.gov             Chief Deputy Attorney General

28

## CERTIFICATE OF SERVICE

I, Sarina Kaplan, hereby certify that the attached Motion for Summary Judgment has been

filed electronically on November 28, 2023, and is available for viewing and downloading from the

Court's Electronic Case Filing System.

<table>
<tr><td></td><td>By</td><td>s/ Sarina Kaplan</td></tr>
<tr><td></td><td></td><td>Sarina Kaplan</td></tr>
<tr><td>Office of Attorney General</td><td></td><td>Senior Deputy Attorney General</td></tr>
<tr><td>1600 Arch St., Suite 300</td><td></td><td>Attorney I.D. No. 209738</td></tr>
<tr><td>Philadelphia, PA 19103</td><td></td><td></td></tr>
<tr><td>Phone: (267) 768-3964</td><td></td><td>Karen M. Romano</td></tr>
<tr><td>Fax:    (717) 772-4526</td><td></td><td>Chief Deputy Attorney General</td></tr>
<tr><td>skaplan@attorneygeneral.gov</td><td></td><td>Civil Litigation Section</td></tr>
</table>